UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CITGO PETROLEUM CORPORATION and :
PDV HOLDINGS, INC., :
: Case No. 09-CV-2116
                Plaintiffs, :
: Hon. Jed S. Rakoff, U.S.D.J
     v. :
: **Oral Argument Requested**
FTC CAPITAL MARKETS, INC., : **Document Electronically Filed**
FTC EMERGING MARKETS, INC., :
FTC HOLDINGS LLC, :
FTC GROUP, GUILLERMO DAVID :
CLAMENS, and LINA LOPEZ, :
:
                Defendants. :
-----------------------------------------------------------x

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDING
OR ALTERNATIVELY TO DISMISS THE CASE**

---

                                              FOX HORAN & CAMERINI LLP
                                              825 Third Avenue, 12th Floor
                                              New York, New York 10022
                                              Tel: (212) 480-4800
                                              Email: drivkin@foxlex.com

                                              Attorneys for Defendants

On the Brief:

    V. David Rivkin (VR-6734)

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS..........................................................................................................1

LEGAL ARGUMENT..................................................................................................................4

POINT I    PLAINTIFFS' CLAIMS AGAINST THE DEFENDANTS SHOULD BE COMPELLED TO ARBITRATION IN ACCORDANCE WITH THE CUSTOMER ACCOUNT AGREEMENTS .................................................................................................4

    A.    The Arbitration Provisions in the Customer Account Agreements Are Governed by the Federal Arbitration Act which Reflects a Strong Public Policy Favoring Arbitration of Disputes ..........................................................................................4

    B.    FTC Is An Intended Beneficiary of The Arbitration Provision of the Customer Account Agreements and May Therefore Enforce the Arbitration Provision and Compel Arbitration of this Dispute ..............................................................8

    C.    Claims Against Defendants' Clamens and Lopez Are Subject to Arbitration .................................................................................................9

    D.    Claims Against Defendants' Holdings and Emerging Markets Are Subject to Arbitration ..........................................................10

POINT II   PLAINTIFFS' ARGUMENT THAT DEFENDANTS "HELD THEMSELVES OUT AS AGENTS OF BNP PARIBAS" DOES NOT RELIEVE PLAINTIFFS OF THEIR AGREEMENT TO ARBITRATE THEIR CLAIMS, AND IN FACT, IF TRUE, FURTHER SUPPORTS DEFENDANTS' MOTION TO COMPEL ARBITRATION ...............................................................................12

POINT III  IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE COMPLAINT ..................................................................................14

CONCLUSION .........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases** — **Pages**

*Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*,
  03 Civ. 1162, 2003 WL 22024070 (S.D.N.Y. Aug. 28, 2003) ... 15

*A/S Custodia v. Lessin Int'l., Inc.*,
  503 F.2d 318 (2d Cir. 1974) ... 8

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.*,
  974 F.Supp. 293 (S.D.N.Y. 1997) ... 8

*Brener v. Becker Paribas Inc.*,
  628 F.Supp. 442 (S.D.N.Y. 1985) ... 9, 10

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) ... 14

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
  991 F.2d 1012 (2d Cir. 1993) ... 8

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ... 6, 7

*Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC*,
  No. 06 Civ. 1510(WHP), 2006 WL 2331009 (S.D.N.Y. Aug. 11, 2006) ... 8

*Forbes v. A.G. Edwards & Sons, Inc.*,
  08 Civ. 552(TPG), 2009 WL 424146 (S.D.N.Y. Feb. 18, 2009) ... 15

*Hartford Fire Ins. Co. v. Evergreen Org., Inc.*,
  410 F. Supp. 2d 180 (S.D.N.Y. 2006) ... 11

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*,
  350 F.3d 568 (6th Cir. 2003) ... 14

*Kramer v. Hammond*,
  943 F.2d 176 (2d Cir. 1991) ... 5

*Kribs v. Bache, Halsey, Stuart, Shields, Inc.*,
  No. 82 Civ. 5794, 1982 WL 1360 (S.D.N.Y. Dec. 7, 1982) ... 5

*Matter of Arbitration between Halcot Navigation Ltd. P'ship v. Stolt-Nielsen Trans Group*, 491 F. Supp. 2d 413 (S.D.N.Y. 2007) ... 11

*McAllister Bros., Inc., v. A & S Transp. Corp.*,
    621 F.2d 519 (2d Cir. 1980) ..................................................................................8

*McPheeters v. McGinn, Smith & Co.*,
    953 F.2d 771 (2d Cir. 1992) ..................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..........................................................................................5, 6, 7

*Nesslage v. York Securities, Inc.*,
    823 F.2d 231 (8th Cir. 1987) ................................................................................9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)..............................................................................................14

*Renaissance Capital Group, Ltd. v. Hedge Fund Adm'rs, Ltd.*,
    No. 00 Civ. 3260(NRB), 2000 WL 1716353 (S.D.N.Y. Nov. 15, 2000) ...............12

*Robinson v. Bache & Co*,
    227 F. Supp. 456 (S.D.N.Y. 1964) ........................................................................5

*Roby v. Corp. of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993) ................................................................................9

*Rodriguez de Quijas v. Shearson/Lehman Bros.*,
    845 F.2d 1296 (5th Cir. 1988), *aff'd*, 490 U.S. 477 (1989)................................6, 7

*S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc.*,
    745 F.2d 190 (2d Cir. 1984) ..................................................................................6

*Scher v. Bear Stearns & Co., Inc.*,
    723 F.Supp. 211 (S.D.N.Y. 1989) .........................................................................9

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)............................................................................................6, 7

*Smith Barney Shearson Inc. v. Sacharow*,
    91 N.Y.2d 39, 689 N.E.2d 884 (1997)...................................................................5

*Thomson-CSF, S.A. v. American Arbitration Association*,
    64 F.3d 773 (2d Cir. 1983) ...............................................................................8, 11

*Vitzethum v. Dominick & Dominick, Inc.*,
    Nos. 94 Civ. 4938, 95 Civ. 429, 1996 WL 19062 (S.D.N.Y. Jan. 18, 1996) ........12

**Statutes**

9 U.S.C. § 2 ...................................................................................................................4

9 U.S.C. § 3 ...............................................................................................................1, 15

9 U.S.C. § 4 ................................................................................................................1, 5

Fed. R. Civ. P. 12.........................................................................................................15

## PRELIMINARY STATEMENT

Defendants FTC Capital Markets, Inc. ("FTC"), FTC Emerging Markets, Inc. ("Emerging Markets") FTC Holdings LLC ("Holdings")[1], Guillermo David Clamens and Lina Lopez submit this memorandum in support of their motion to compel the claims of plaintiffs CITGO Petroleum Corporation ("CITGO") and PDV Holdings, Inc. ("PDVH") to arbitration pursuant to 9 U.S.C. § 4, and to stay this action pending completion of the arbitration pursuant to 9 U.S.C. § 3, or in the alternative, to dismiss the present action. Each plaintiff executed an account agreement mandating that they arbitrate the controversies alleged in their Complaint. Accordingly, this Court should order plaintiffs' claims to arbitration and stay this action pending completion of the arbitration. In the alternative, this matter should be dismissed because this Court lacks subject matter jurisdiction and because plaintiffs fail to state a claim for which relief can be granted.

## STATEMENT OF FACTS

Since January, 2008 and at all times alleged in the Complaint, defendant FTC, "a broker-dealer registered with FINRA", "acted as an introducing broker pursuant to a fully disclosed clearing agreement concluded between it and BNP Paribas Securities Corp. ("BNP Paribas")." (Compl. ¶ 8; Declaration of Guillermo D. Clamens ("Clamens Decl."), ¶¶ 3-5). "Pursuant to that clearing agreement, FTC introduced customer accounts to BNP Paribas, which would act as clearing broker for the accounts." (Compl. ¶ 8.) "[I]n or around April 2008, FTC introduced and opened cash [brokerage] accounts at BNP Paribas in the name of CITGO [Account No. 31600066] and PDVH [Account

1

No. 31600085]" (the "Accounts"). *Id.* BNP Paribas, the clearing broker, has not been named a party to this action.

Both plaintiffs executed identical standard brokerage account agreements ("Customer Account Agreements") in connection with the opening of the Accounts, and each plaintiff penned in several identical hand changes to the text of their respective agreement. (Clamens Decl. ¶ 6; Ex. A and B.) The signature page of each Customer Account Agreement signed by each plaintiff states in bold-face type:

> **THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN PARAGRAPH 22. BY SIGNING BELOW, YOU AGREE TO THE ABOVE TERMS AND ACKNOWLEDGE HAVING RECEIVED A COPY OF THIS AGREEMENT.**

(Clamens Decl. ¶ 7; Ex. A and B.)

Paragraph 22 on page 4 of each Account Agreement entitled "Arbitration" states in bold-faced type that:

**This agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement the parties agree as follows:**

- **All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**

...

**Subject to the preceding disclosures, you agree that any and all controversies which may arise between you and Introducing Broker and/or BNP Paribas Securities Corp. concerning your accounts, any transaction or the construction, performance or breach of this or any other agreement between you and Introducing Broker and/or BNP Paribas Securities Corp., whether entered into prior, on or subsequent to the date hereof, will be determined by arbitration. Any arbitration under this Agreement will be determined before the NYSE or NASD in accordance with the rules of that particular regulatory agency then in effect, a copy of such rules will be provided upon request.**

(Remainder of Paragraph Omitted, emphasis added).

---

[1] Plaintiffs also interpose claims against "FTC Group" which is not a legal entity, but a trade name under which several companies, including FTC, Emerging Markets and Holdings, operate. (Clamens Decl. ¶ 12.)

2

On or about March 9, 2009, plaintiff filed the instant action. The Complaint alleges generally that FTC, through its president Guillermo Clamens and its employee Lina Lopez, "diverted and misused Plaintiffs' investment funds" in the Accounts. (Compl. ¶ 1). Specifically, plaintiffs interpose claims against defendants FTC, Lopez and Clamens for alleged violations of Section 10(b) of the Securities Exchange Act and against defendant Clamens for control person liability pursuant to Section 20(a) of the Act. (Compl. ¶¶ 156-168.) Plaintiffs also interpose common law claims against defendants FTC, Clamens and Lopez alleging fraud, conversion, breach of fiduciary duty, promissory estoppel and negligence in connection with their management of the Accounts. (Compl. ¶¶ 169-195.) Finally, plaintiffs interpose claims against all defendants, including Holdings and Emerging Markets, for unjust enrichment and for the imposition of a constructive trust in connection with the funds in the Accounts. (Compl. ¶¶ 196-205.)

There can be no doubt that all of plaintiffs' claims against the defendants in the Complaint arise out of and concern transactions involving the Accounts. As such, the terms of the arbitration provision in the Customer Account Agreements mandate that such claims be arbitrated. Accordingly, the motion should be granted.

# LEGAL ARGUMENT

## POINT I

### PLAINTIFFS' CLAIMS AGAINST THE DEFENDANTS SHOULD BE COMPELLED TO ARBITRATION IN ACCORDANCE WITH THE CUSTOMER ACCOUNT AGREEMENTS

The plaintiffs' claims against FTC fall squarely within the valid arbitration provision of the Customer Account Agreement that each plaintiff signed. FTC, as the introducing broker, is the expressed intended beneficiary of the arbitration provision. Defendants Clamens and Lopez, as the officer and agent respectively, of FTC are covered by the arbitration clause as a matter of law. The claims against defendants Holdings and Emerging Markets likewise arise out of and are intertwined with claims against FTC. Accordingly, these claims should be compelled to arbitration and this action stayed pending completion of the arbitration.

**A.   The Arbitration Provisions in the Customer Account Agreements Are Governed by the Federal Arbitration Act which Reflects a Strong Public Policy Favoring Arbitration of Disputes.**

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, (1970) (the "FAA") governs the enforceability of the Customer Account Agreement signed by each plaintiff. The FAA applies to all contracts evidencing a transaction involving commerce. Section 2 of the FAA, 9 U.S.C. § 2, provides in relevant part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or any agreement in writing to submit to arbitration an existing controversy arising out of such contract [or] transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.

The Customer Account Agreements at issue are account agreements for securities brokerage accounts. Similar securities brokerage accounts have consistently been held to involve commerce. *See Robinson v. Bache & Co*, 227 F. Supp. 456, 458 (S.D.N.Y. 1964) (customer's margin and lending agreement with brokerage firm evidence a "transaction involving commerce" within the meaning of § 2 of the FAA); *Kribs v. Bache, Halsey, Stuart, Shields, Inc.*, No. 82 Civ. 5794, 1982 WL 1360, *2 (S.D.N.Y. Dec. 7, 1982) ("courts have long held this [Arbitration] Act applicable to arbitration agreements related to brokerage accounts"). Therefore, the Customer Account Agreements executed by plaintiffs, including the arbitration provisions contained therein, are governed by the FAA.

Section 4 of the FAA, 9 U.S.C. § 4, authorizes U.S. district courts to order a recalcitrant party to arbitrate a controversy pursuant to the terms of a written arbitration agreement. Section 4 provides in relevant part that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in a manner provided for in such agreement.

The FAA, as well as New York law, reflects the strong public policy favoring arbitration of disputes—a policy that requires that any doubt be resolved in favor of arbitration. *See Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 46, 689 N.E.2d 884 (1997); *Kramer v. Hammond*, 943 F.2d 176, 178 (2d Cir. 1991) (there is a strong presumption in favor of arbitration). As the Supreme Court held in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983):

5

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability.

*Id.* at 24-25; *see also S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984) (holding that "arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'").

In the instant matter, there is no doubt that the claims alleged in the Complaint fall within the scope of the arbitration provisions contained in the Customer Account Agreements. The Complaint alleges, among other things, that FTC, through its officer and employee[2] "diverted and misused Plaintiffs' investment funds" contained in the Accounts, and engaged in "unauthorized and speculative trading" with such Account funds. All of plaintiffs' claims necessarily arise out of and relate to plaintiffs' Accounts, or transactions in the Accounts. Therefore, plaintiffs' claims are properly subject to arbitration pursuant to the terms of the Customer Account Agreements.

Indeed, the Supreme Court has emphasized a strong preference for arbitration, particularly in the context of broker-customer disputes involving securities accounts. *See Rodriguez de Quijas v. Shearson/Lehman Bros.*, 845 F.2d 1296 (5th Cir. 1988), *aff'd*, 490 U.S. 477 (1989); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [Arbitration] Act leaves no place for the exercise of discretion by a district court, but

---

[2] Defendant Lina Lopez in not and has never been an employee of FTC. Rather, she acted as an agent of FTC in connection with the plaintiffs' accounts. (Clamens Decl. ¶ 9.)

6

instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis in original).

*McMahon* is perhaps the seminal United States Supreme Court case enforcing the arbitrability of securities disputes. In *McMahon*, the Court reasoned that "the Arbitration Act thus establishes a 'federal policy favoring arbitration,' requiring that 'we rigorously enforce agreements to arbitrate.'" *McMahon*, 482 U.S. at 226 (internal citations omitted) (quoting respectively, *Moses H. Cone*, 460 U.S. at 24; *Byrd*, 470 U.S. at 221.).

In *Rodriguez*, the Supreme Court affirmed the lower court's decision that an arbitration clause was enforceable. *Rodriguez* involved securities investors who signed a standard customer agreement which included a provision requiring account disputes to be resolved through binding arbitration. The Court of Appeals held that a pre-dispute agreement to arbitrate claims under the Securities Act of 1933 was enforceable and did not require resolution of the claims in a judicial forum. To support its holding, the court relied on *McMahon*, stressing the strong federal policy favoring arbitration. *Rodriguez*, 845 F.2d at 1297-99.

Applying the foregoing case law to the instant matter, the arbitration provisions contained in the Customer Account Agreements constitute valid and enforceable agreements to arbitrate. By executing the Customer Account Agreements, plaintiffs expressly agreed to submit to arbitration all controversies with BNP Paribas or any introducing broker concerning transactions in the Accounts. Clearly, those arbitration provisions are binding on plaintiffs with respect to the claims set forth in the Complaint, and must, therefore, be enforced.

B.  **FTC Is An Intended Beneficiary of The Arbitration Provision of the Customer Account Agreements and May Therefore Enforce the Arbitration Provision and Compel Arbitration of this Dispute.**

While FTC is not a signatory to the Customer Account Agreements, courts have made clear that non-signatories may be bound to an arbitration agreement if so dictated by the "ordinary principles of contract and agency." *Thomson-CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 776 (2d Cir. 1983), *citing, McAllister Bros., Inc., v. A & S Transp. Corp.*, 621 F.2d 519 (2d Cir. 1980) and *A/S Custodia v. Lessin Int'l, Inc.*, 503 F.2d 318 (2d Cir. 1974); *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F.Supp. 293, 299-300 (S.D.N.Y. 1997) ("[o]ur Court of Appeals has rejected the proposition that only signatories to an arbitration agreement can be bound by its terms, applying instead ordinary principles of contract and agency to determine which parties are bound by an agreement to arbitrate").

Under general contract principles, "non-signatories [ ] fall within the scope of an arbitration agreement where that is the intent of the parties." *McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771, 772 (2d Cir.1992) (per curiam); *see Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993). Both a party in "contractual privity" as well as "third-party beneficiary of a contract" have "standing to enforce the terms of the agreement," including an arbitration clause. *Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC*, No. 06 Civ. 1510(WHP), 2006 WL 2331009, *6 (S.D.N.Y. Aug. 11, 2006); *Borsack*, 974 F.Supp. at 300 ("Thus, when a plaintiff who acquires rights under a contract as an agent, third-party beneficiary, or assignee subsequently 'bases [his] right to sue on the contract itself the provision requiring arbitration as a condition precedent to recovery must be observed'") (alteration in original).

Case 1:09-cv-02116-JSR    Document 4    Filed 04/01/2009    Page 14 of 20

As the introducing broker, FTC is a specified intended third-party beneficiary of the arbitration provision set forth in Paragraph 22 of each plaintiff's Customer Account Agreement. Paragraph 22 provides that each plaintiff agrees "that any and all controversies which may arise between [plaintiff(s)] and <u>Introducing Broker</u> and/or BNP Paribas Securities Corp. concerning [the] accounts, any transaction or the construction, performance or breach of this or any other agreement between [plaintiff(s)] and Introducing Broker and/or BNP Paribas Securities Corp., whether entered into prior, on or subsequent to the date hereof, will be determined by arbitration." (emphasis added).

That FTC acted as the introducing broker in connection with the Accounts is beyond cavil, and <u>plaintiffs have pleaded as much in the Complaint</u>, stating that "at all relevant times . . . FTC acted as an introducing broker . . . ." (Compl. ¶ 8; Clamens Decl. ¶¶ 73-4) and that "FTC introduced customer accounts to BNP Paribas, which would act as clearing broker for the accounts." *Id.* Thus, FTC is clearly a third-party beneficiary of the arbitration provision of the Customer Account Agreement, and any claims by the plaintiffs against FTC in connection with the Accounts or any transactions under the Customer Account Agreements, or the construction thereof, must be compelled to arbitration in accordance with that agreement.

C.  <u>Claims Against Defendants' Clamens and Lopez Are Subject to Arbitration.</u>

Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement. *See, e.g., Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993); *Nesslage v. York Securities, Inc.*, 823 F.2d 231, 233-34 (8th Cir. 1987); *Scher v. Bear Stearns & Co., Inc.*, 723 F.Supp. 211, 216-17 (S.D.N.Y. 1989); *Brener v. Becker Paribas Inc.*, 628 F.Supp. 442, 451 (S.D.N.Y. 1985). Defendant Clamens is the Chairman of FTC

9

(Compl. ¶ 12), and defendant Lina Lopez is an agent[3] of FTC (Compl. ¶ 13; Clamens Decl. ¶¶ 1, 3). The claims against Clamens and Lopez arise out of their actions as an officer and agent of FTC in connection with the Accounts, and are based on a controversy arising out of the Accounts, and are completely dependent on the claims against FTC in connection with those Accounts. As such, the claims against Clamens and Lopez fall squarely within the scope of the arbitration agreement. *See, Brener*, 628 F.Supp. at 451.

### D. Claims Against Defendants' Holdings and Emerging Markets Are Subject to Arbitration.

Defendant Holdings wholly owns defendant FTC. (Compl. ¶ 10.) Plaintiffs allege that Holdings directs the management or policies of defendant FTC, *id.*, and that defendant Clamens is its "president and chief executive officer and directs management and policies of [Holdings]." (Compl. ¶ 12.)

Plaintiffs also allege that defendant Emerging Markets, a Panamanian company, "is an investment advisory business that trades on a proprietary basis and also trades on behalf of, and advises, exclusively non-U.S. persons" and that "Emerging Markets acted as arranger and dealer in respect to a series of Secured First-to-Default Credit-Linked Notes issued by [non-party] FTC International SPC." (Compl. ¶ 9.) Plaintiffs also allege that defendant Clamens is the president of Emerging Markets. (Compl. ¶ 12.)

In their Complaint, plaintiffs do not allege any misconduct on the part of either Emerging Markets or Holdings, except for claiming that these entities "received a direct or indirect economic benefit" stemming from the alleged diversion of "investment funds" in the Accounts (Compl. ¶¶ 203-205) and that these entities benefited from the acts of

---

[3] See FN 2.

defendants FTC, Clamens and Lopez in connection with investment of funds in the Accounts (Compl. ¶ 197).

Although neither Emerging Markets nor Holdings are signatories to the Customer Account Agreements, courts have held that the standard governing whether a particular claim against a non-signatory should be arbitrated "looks to the degree to which the issues sought to be arbitrated are 'intertwined with the agreement that the [signatory] party has signed. *Matter of Arbitration between Halcot Navigation Ltd. P'ship v. Stolt-Nielsen Trans Group*, 491 F. Supp. 2d 413, 422 (S.D.N.Y. 2007); *see also Hartford Fire Ins. Co. v. Evergreen Org., Inc.*, 410 F. Supp. 2d 180, 186 (S.D.N.Y. 2006) ("courts have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with [the issues in] the agreement that the estopped party has signed"), *citing, Thomson-CSF*, 64 F.3d at 779. Here, the claims against Holdings and Emerging Markets (seeking imposition of constructive trust and for unjust enrichment) are clearly and completely intertwined with plaintiffs' underlying claims against FTC, involve the same facts and occurrences, and, at best, exist only if the underlying claims against FTC are proven. The claims against Holdings and Emerging Markets should be compelled to arbitration together with plaintiffs' principal claims against FTC, Clamens and Lopez.

Furthermore, plaintiffs allege that Holdings "wholly owns [d]efendant FTC and directs the management or policies of FTC" (Compl. ¶ 10) which suggest both that Holdings may be a third-party beneficiary of the Customer Account Agreement and that FTC may have acted as Holdings' agent in connection with the Accounts at issue herein, and thus there is a separate basis for plaintiffs' claims against Holdings to be compelled

11

to arbitration. *Cf. Vitzethum v. Dominick & Dominick, Inc.*, Nos. 94 Civ. 4938, 95 Civ. 429, 1996 WL 19062 (S.D.N.Y. Jan. 18, 1996), *7 (permitting corporate parent to enforce arbitration clause in agreement signed by subsidiary); *Renaissance Capital Group, Ltd. v. Hedge Fund Adm'rs, Ltd.*, No. 00 Civ. 3260(NRB), 2000 WL 1716353, *3 n.3 (S.D.N.Y. Nov. 15, 2000) (finding that parent of wholly owned subsidiary that was alleged to have exercised exclusive control of accounts at issue through the management, supervision and/or control of its wholly owned subsidiary was subject to arbitration agreement entered into by subsidiary under a third-party beneficiary and agency theory).

## POINT II

### PLAINTIFFS' ARGUMENT THAT DEFENDANTS "HELD THEMSELVES OUT AS AGENTS OF BNP PARIBAS" DOES NOT RELIEVE PLAINTIFFS OF THEIR AGREEMENT TO ARBITRATE THEIR CLAIMS, AND IN FACT, IF TRUE, FURTHER SUPPORTS DEFENDANTS' MOTION TO COMPEL ARBITRATION

On March 18, 2009, counsel for all parties appeared at a conference with the Court. At that conference, plaintiffs' counsel argued that plaintiffs should not be bound by the arbitration provision because one or more of the defendants "held himself out as an agent of BNP Paribas."

First, no such allegation is made anywhere in the Complaint. In fact, the Complaint states just the opposite: "At all times relevant to the matters alleged herein, FTC acted as an introducing broker," that "FTC introduced customers account to BNP Paribas which would act as clearing broker for the accounts" and that "in or around April 2008, FTC introduced and opened cash accounts at BNP Paribas in the name of CITGO and PDVH." (Compl. ¶ 8.)

Second, Paragraph 10 of the Customer Account Agreements (Clamens Decl. ¶ 6; Ex. B and C), expressly states that "[i]f BNP Paribas Securities Corp. carries your account as clearing broker by arrangement with another broker through whose courtesy your account has been introduced," which, according to the Complaint is what transpired in this case, then the plaintiffs "agree that BNP Paribas Securities Corp. shall have no responsibility or liability to [the plaintiffs] for any acts or omissions of such other broker, its officers, employees or agents, and that BNP Paribas Security Corp's sole responsibilities to [the plaintiffs] relate to the execution, clearing and bookkeeping of transaction in [plaintiffs'] account(s)." This is an express disavowal of any agency relationship between BNP (the clearing broker) and FTC (the introducing broker) or any of the individual defendants. By signing the Customer Account Agreement, the plaintiffs acknowledged the lack of any such purported agency relationship between defendants and BNP.

Third, assuming *arguendo* that the defendants did indeed "hold themselves out as agent(s) of BNP Paribas," the arbitration provision of the Customer Account Agreement (Paragraph 22) expressly states that any controversies between plaintiff(s) and BNP Paribas concerning the Accounts shall be determined by arbitration. Thus, under ordinary contractual and agency principles, plaintiffs agreed to arbitrate any disputes with agents of BNP Paribas concerning the Accounts.

Finally, to the extent that plaintiffs seek to avoid arbitration claiming that they were induced by defendants to enter into the Customer Account Agreement by virtue of defendants "holding themselves out as agents of BNP", no such fraudulent inducement claim has been made in the Complaint. More importantly, the United States Supreme

13

Court has held that a claim of fraud in the inducement to enter into a contract containing an arbitration clause is a matter to be resolved by the arbitrators, not the federal courts. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967). Recently, the Supreme Court held that unless the challenge is to the arbitration clause itself, the issue of the contract's validity as whole must be considered by the arbitrator in the first instance. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-445 (2006). The Sixth Circuit summed it up nicely when it held that "in order to void an arbitration clause, the complaint must contain a 'well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement*, that would provide grounds for the revocation of the agreement to arbitrate.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576 (6th Cir. 2003) (emphasis in original). Here, there is no allegation that CITGO or PDVH was fraudulently induced to agreeing to the arbitration clause in the Customer Account Agreements. Therefore, as *Prima Paint* instructs, this matter must be resolved by an arbitrator.

## POINT III

### IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE COMPLAINT

In this action, plaintiffs are seeking are seeking damages for a dispute arising out of and in connection with the Accounts. The controversy is clearly within the scope of the Customer Account Agreements' arbitration provision, and for the reasons set forth above, plaintiffs' claims against each of the defendants must be arbitrated. If "all of the plaintiff's claims are subject to arbitration, no useful purpose will be served by granting a

14

stay" of judicial proceedings pursuant to 9 U.S.C. § 3, the case may be dismissed. *Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*, 03 Civ. 1162, 2003 WL 22024070, *3 (S.D.N.Y. Aug. 28, 2003); *see also Forbes v. A.G. Edwards & Sons, Inc.*, 08 Civ. 552(TPG), 2009 WL 424146 (S.D.N.Y. Feb. 18, 2009). The Complaint must, therefore, be dismissed for failing to state a cause of action for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) or 12(b)(1).

## CONCLUSION

For the foregoing reasons, the defendants respectfully request that this Court enter an order directing plaintiffs to arbitrate the controversies alleged in their Complaint in accordance with the terms of the arbitration provision of the Customer Account Agreement that each plaintiff signed, and to stay all proceedings in this action pending arbitration. In the alternative, defendants ask that the Court dismiss the Complaint without prejudice for lack of subject matter jurisdiction or for failure to state a cause of action upon which relief may be granted.

Respectfully submitted,

_____
V. David Rivkin (VR 6734)
Fox Horan & Camerini LLP
Attorneys for Defendants

Dated: April 1, 2009